UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM PETAWAY :<br>    Plaintiff, :<br> : No. 3:21-cv-00080 (VLB)<br>v. :<br> :<br>SAM'S FOOD STORE et al. : May 25, 2021<br>    Defendants. : | |

## ORDER DISMISSING COMPLAINT

Plaintiff William Petaway brough this case *pro se* and *in forma pauperis* against Sam's Food Store and its manager Shaq for negligence in not preventing a stabbing attack against Plaintiff on June 16, 2018 in the Sam's Food Store parking lot, and brought 14th Amendment Due Process and Equal Protection claims against Defendants City of New Haven, New Haven former Police Chief Anthony Campbell, and New Haven Police Department District Manager Lieutenant Healy for not protecting Plaintiff from attack when he was stabbed.  [ECF Nos. 1, 2].  On March 12, 2021, the Court dismissed Plaintiff's Complaint without prejudice to Plaintiff filing an Amended Complaint by April 16, 2021 adequately stating a claim for relief.  [ECF No. 12].

On March 16, 2021, Plaintiff filed a motion for reconsideration of the March 12, 2021 Order, [ECF No. 14], and filed an Amended Complaint on March 23, 2021. [ECF No. 15].  Plaintiff then moved to withdraw his motion for reconsideration on

1

April 9, 2021, asserting that his amended complaint "makes clear" Plaintiff is only pursuing an equal protection claim, not a due process claim. [ECF No. 17].

Plaintiff asserts in his Amended Complaint, in support of his equal protection claim, that Sam's Food Store, where he was assaulted, is a "high crime" area, which was known to Defendant Healy, Defendant Campbell, and the police officers working in the Sam's Food Store police district, and which constituted an "imminent harm" to Plaintiff. [ECF No. 15 ¶¶ 40 A, C, H]. Plaintiff asserts that the New Haven Police Department is divided into "districts," and that Defendant Healy was the District Manager in charge of the district containing Sam's Food Store. *Id.* ¶¶ 40 L, M. Plaintiff asserts further that Defendant Campbell, as a former police chief, was a "policymaker" for the City of New Haven and knew Defendant Healy was not addressing the high crime problem in the Sam's Food Store district. *Id.* ¶¶ Q, S. Plaintiff claims other police district managers take action once a business is shown to be crime hotspot, *id.* ¶ 36 E, and Defendant Healy's failure to do so in the Sam's Food Store district, which is comprised of "black people," caused Plaintiff's stabbing and violated the equal protection clause of the 14th Amendment. *Id.* ¶¶ 40 U, X, Y.

Plaintiff attaches a New Haven Register article as an exhibit, which Plaintiff asserts supports his equal protection claim because it shows that Defendant Healy "has been, and still [is] providing 'unequal police services,' in that '[police] patrol[s] increased' after [a] Jewish man [was] assaulted, but <u>not</u> [after a] black man [was] assault[ed]." *Id.* at 57 of 70 (emphasis in original). The article reports that a man was assaulted in the Beaver Hills neighborhood of New Haven, and that

2

a group of residents of that neighborhood, who are "largely members of the Orthodox Jewish community," urged the city to "invest further in the safety of residents." *Id.* at 59 of 70.  The article reports further that some violent crime statistics showed an uptick in crime, while others did not.  *Id.* at 63-64 of 70.  According to the article, Lieutenant John Healy had recently been made district manager of the Beaver Hills area, and one resident was concerned because he was "stretched thin," as he was responsible for another neighborhood as well.  *Id.* at 65 of 70.  Healy is reported to be "an exemplary district manager" who is "hamstrung by a lack of [police] officers."  *Id.*  The Mayor of New Haven is quoted as saying that police patrols had increased in the Beaver Hills area, but that he and the City were facing a "budget crisis," and that:

> This is about limited resources, and our ability to manage under very, very difficult financial challenges.  It would be nice if I could just snap my fingers and every neighborhood would have more beat cops.  Of course we want that to happen. . . . We just don't have that luxury right now, and until we get more funding from the state, from Yale University, or from increased taxes, we're not going to be able to do that."

*Id.* at 66 of 70.

## Legal Standard

Pursuant to 28 U.S.C. § 1915, Proceedings *in Forma Pauperis*, "the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

"[A] plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

3

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

It is well settled that "[t]o sustain a cause of action, the court must determine whether the defendant owed a duty to the plaintiff." *Shore v. Town of Stonington*, 187 Conn. 147, 151 (1982). "The existence of a duty is a question of law," and "[t]he law does not recognize a 'duty in the air.'" *Id.* (citations omitted). "We have recognized the existence of such duty in situations where it would be apparent to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm." *Id.* at 153 (citing *Sestito v. Groton*, 178 Conn. 520, 528 (1979)).

The doctrine of qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly [with] the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).

"Qualified immunity 'provides ample protection to all but the plainly incompetent or *those who knowingly violate the law*.'" *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (emphasis in original); *see also Jackler v. Byrne*, 658 F.3d 225, 243 (2d Cir. 2011) (mere mistake in performance of official duty does not deprive official of qualified immunity defense).

"[T]here are three recognized exceptions to this [qualified] immunity: (1) when the alleged conduct involves malice, wantonness, or intent to injure; (2) when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and (3) when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." *Ravalese v. Town of East Hartford*, No. 3:16-cv-01642 (VAB), 2019 WL 2491657, at *11 (D. Conn. June 14, 2019) (citing *Doe v. Petersen*, 279 Conn. 607, 615–16 (2006)). "The 'identifiable person-imminent harm exception has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm....All three must be proven in order for the exception to apply.'" *Id.* (quoting *Haynes v. City of Middletown*, 314 Conn. 303, 312–11 (2014)).

The Fourteenth Amendment Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of*

5

*Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to prove a violation of the Equal Protection Clause, a plaintiff must demonstrate evidence of "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Thus, to prevail on an equal protection claim, a plaintiff must allege that (1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such as race, national origin, religion or some other protected right. *See Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011) (citation omitted).

When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals are treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012). Thus, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain*." Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER),

2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

## Analysis

Here, Plaintiff alleges that the New Haven Police Department was at fault because they did not prevent his injuries.  Plaintiff alleges that the New Haven Police Department has a self-proclaimed "duty to protect," which means that they should have protected him.  But absent any kind of notice of "imminent harm" to Plaintiff just before he was stabbed, what Plaintiff alleges amounts to a "duty in the air" or more specifically, one to the general public and not to Plaintiff specifically. *Shore*, 187 Conn. at 153 (citing *Sestito*, 178 Conn. at 528).

In addition, in the absence of notice of imminent harm to Plaintiff, Defendants are immunized from liability because of qualified immunity.  Plaintiff fails to allege facts showing Defendants were aware of imminent harm to Plaintiff's person and deliberately declined to protect him; therefore, the Court cannot say that Defendants "knowingly violated the law."  *Yelich*, 718 F.3d at 166; *see also Ravalese*, 2019 WL 2491657, at *11 ("The 'identifiable person-imminent harm exception has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm....All three must be proven in order for the exception to apply.'") (quoting *Haynes*, 314 Conn. at 312–11).  Plaintiff does not allege that he or anyone else notified police that he was about to be attacked, nor

7

does he allege that Defendant Healy or any other police officer received such a warning and ignored it.

Even if Defendants did not enjoy qualified immunity, Plaintiff has failed to allege a plausible equal protection claim.  His only claim is that Defendants failed adequately protect him at Sam's Food Store, but Plaintiff must plausibly allege "purposeful discrimination … directed at an identifiable or suspect class," *Giano*, 54 F.3d at 1057, *i.e.*, that (1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such as race, national origin, religion or some other protected right. *Colantuono*, 801 F. Supp. 2d at 118.  But Plaintiff asserts no facts showing that Defendants intentionally treated him differently and that this disparate treatment was because of his race.  In fact, while the New Haven Register article does state that police patrols increased in the Beaver Hills neighborhood following an assault on a resident, it is silent as to the responses in other neighborhoods, and seems to indicate that to the extent there are deficiencies in policing in New Haven, these are more the result of budget challenges rather than any kind of discriminatory intent.[1]  Moreover, it describes Defendant Healy's performance as "exemplary" and indicates that he is doing the best he can despite being "hamstrung" by a lack of available police officers.  Plaintiff cites Judge Meyer's decision in *Grenier v. Stratton* denying summary judgment to two

---

[1] To the extent Plaintiff's claim is based on the New Haven Police Department's failure to protect his entire neighborhood, Plaintiff very likely has a serious standing problem, as the only harm alleged is the harm to him perpetrated by his uncle at Sam's Food Store.

defendants, but there the defendants made "explicit" racial slurs "that a reasonable jury could find were derogatory," and the evidence showed that the defendants intentionally neglected their duties *after receiving a 911 call* warning of imminent danger to the victim. 44 F. Supp. 3d 197, 204 (D. Conn. 2014). No such discriminatory facts nor any warning to defendants of such imminent danger are alleged here.

To the extent Plaintiff is alleging a class of one equal protection violation, Plaintiff has not shown "an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] [himself]." *Clubside*, 468 F.3d at 159. In other words, Plaintiff must show that someone similarly situated to him was not subjected to the same hardship that he endured, but there are no facts alleged suggesting how Plaintiff's situation is similar to others who are provided allegedly robust police protection. The article Plaintiff cites is silent on such facts, as is the remainder of Plaintiff's Amended Complaint. Plaintiff has not shown that his situation is so similar to others who *were* provided protection that the only inference is that Defendants acted improperly. Rather, as noted, the most likely, and therefore the most "plausible" scenario is that budget pressures were dictating police operations to a great extent rather than any kind of discriminatory animus. Plaintiff has asserted no facts showing otherwise. In sum, all Plaintiff has alleged is "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. That is not enough to push his claim across the plausible line.

9

## Conclusion

For the reasons stated above, the court dismisses this case as not stating a claim for which relief can be granted. *Twombly*, 550 U.S. at 570 ("[A] plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."). The Clerk is directed to close this case.

IT IS SO ORDERED

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: May 25, 2021